Arthur P. CLEARY, Plaintiff-Appellee,

v.

The NEW YORK, NEW HAVEN &
HARTFORD RAILROAD COM-
PANY, Defendant,

and

The Pennsylvania Railroad Company,
Defendant-Appellant.
No. 363, Docket 24032.

United States Court of Appeals
Second Circuit.

Argued June 5, 1957.

Decided Sept. 11, 1957.

Bromsen & Gammerman, New York
City (Ira Gammerman, New York City,
of counsel), for plaintiff-appellee.

Conboy, Hewitt, O'Brien & Boardman,
New York City (David J. Mountan, Jr.,
New York City, of counsel), for defend-
ant-appellant.

Before MEDINA, LUMBARD and
WATERMAN, Circuit Judges.

PER CURIAM.

The plaintiff, a locomotive engineer
employed by the New York, New Haven
and Hartford Railroad Company, brought
an action against his employer and the
appellant, The Pennsylvania Railroad
Company, for injuries sustained by him
in an accident occurring on November 13,
1951. The trial court granted the em-
ployer's motion for a directed verdict,
from which ruling the plaintiff has not
appealed. The action against the appel-
lant Pennsylvania, jurisdiction of which
was based upon the diverse citizenship
of the parties, was permitted to go to the
jury and a verdict for the plaintiff was
returned. Appellant assigns as error
the failure of the trial court to grant its
motions for a directed verdict, for judg-
ment notwithstanding the verdict, and
for a new trial.

On November 13, 1951, the plaintiff,
assigned as engineman on a train sched-
uled to depart from Pennsylvania Sta-
tion, New York City, proceeded to walk
through the station to the track upon
which his locomotive was standing. He
walked west on the platform between
tracks 9 and 10. Shortly before reach-
ing the end of the platform, he crossed
over to track 11 and proceeded to walk
in a westerly direction between tracks 11
and 12. No platform separated these
tracks at this point, and, when there
were trains on both tracks, there was less
than a two foot clearance between them.
A train stood on track 11. It extended
some 50 feet beyond the west end of the
platform between tracks 11 and 12, and,
as plaintiff walked west, this train was
on his left. Shortly before reaching the

end of the train on track 11, the plaintiff was struck by a train proceeding westerly on track 12. There was conflicting evidence as to the speed at which the train was moving and the jury could have found any one of several speeds, ranging from 5 to 25 m. p. h. The engineer testified that when the train was 240 to 320 feet east of the west end of the platform between tracks 11 and 12 he had seen the plaintiff in the clearance between tracks 11 and 12, but that he had not applied his brakes to reduce the speed of the train.

At the conclusion of all the testimony, the trial court held as a matter of law that the plaintiff was guilty of negligence, and therefore instructed the jury that the only way the plaintiff could recover was by reliance upon the doctrine of "the last clear chance." The court submitted a special verdict to the jury containing four specific interrogatories, the answers to which would determine if the facts the jury found permitted recovery under that doctrine.[1] The jury answered each of these questions favorably to the plaintiff, and returned a general verdict awarding the plaintiff damages.

The instructions given to the jury and the specific interrogatories submitted to it correctly stated the law of New York relating to the doctrine of the last clear chance. Kumkumian v. City of New York, 1953, 305 N.Y. 167, 111 N.E.2d 865; Chadwick v. City of New York, 1950, 301 N.Y. 176, 93 N.E.2d 625; Panarese v. Union Ry. Co., 1953, 261 N.Y. 233, 185 N.E. 84; Woloszynowski v. New York Central R. R. Co., 1930, 254 N.Y. 206, 172 N.E. 471. In view of this, the answers of the jury to the specific interrogatories and the verdict rendered consistently with them cannot be disturbed if there is evidence sufficient to sustain them. The appellant urges that there was no evidence from which the jury could find either that the plaintiff was in a position of peril from which he could not extricate himself or that any member of the defendant's locomotive crew knew he was in such peril. We find no merit in either contention.

The appellant's first contention appears to be based on the suggestion that in order to avoid being struck by the locomotive plaintiff need only have dropped to the ground beneath the underrigging of the locomotive. But whether by so doing the plaintiff would have escaped injury or even whether there was time for the plaintiff to take such action were questions for the jury. Since the evidence disclosed that plaintiff had been knocked to the ground; and that subsequently his clothes had been torn and he had been injured by the underrigging, the jury's answer to the first interrogatory was supported by the evidence.

Nor do we think that there was insufficient evidence to support the jury's finding that a responsible member of the defendant's locomotive crew knew of plaintiff's peril. The engineer admitted that he had seen the plaintiff and that he knew of the narrow clearance between the tracks. Thus there was evidence from which the jury could find that the engineer, at a time when he could have stopped his locomotive before it would

---

1. The interrogatories were as follows:

First: Was the plaintiff, Cleary, at the time just prior to the accident in such a dangerous situation that he had lost all ability to extricate himself therefrom?

Second: If your answer to question "First" is in the affirmative, did the defendant's engineer, Keilt, or any responsible member of the defendant's locomotive crew know of Cleary's inextricable peril just prior to the accident?

Third: If your answers to questions "First" and "Second" are in the affirmative, did the defendant's engineer, Keilt, or any responsible member of the defendant's locomotive crew, have an opportunity to avert the peril to Cleary and its consequences?

Fourth: If your answers to questions "First," "Second" and "Third" are all in the affirmative, was there a failure of a reasonable effort by the defendant's engineer, Keilt, or by any responsible member of the defendant's locomotive crew to avert the peril to Cleary and its consequences?

reach the plaintiff, was aware that the plaintiff had placed himself in a position of peril from which he could not remove himself.

Affirmed.