**Brenda HULL and Michael Hull, Appellants–Plaintiffs,**

v.

**Thomas TAYLOR, Appellee–Defendant.**

No. 33A05–9403–CV–104.

Court of Appeals of Indiana, Fifth District.

Dec. 28, 1994.

---

Thomas E.Q. Williams, Greenfield, for appellants.

John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for appellee.

## OPINION

BARTEAU, Judge.

Brenda and Michael Hull (collectively "Plaintiff") appeal from a negative jury verdict in their personal injury action against Thomas Taylor ("Defendant"). Plaintiff raises two issues, restated as:

1. Whether the doctrine of last clear chance survived the enactment of comparative fault; and

2. Whether the trial court erred in denying Plaintiff's motion for mistrial following Defendant's testimony relating to insurance coverage.

We affirm the trial court in all respects.

## FACTS

This litigation involved a collision between the automobiles of Plaintiff and Defendant. The evidence viewed in the light most favorable to the verdict reveals that the accident occurred at the intersection of Ind. Rd. 234 and Fortville Pike. Defendant was proceeding East on Ind. Rd. 234 and had the right-of-way. Plaintiff was travelling South on Fortville Pike and stopped at the two-way stop sign at the intersection. Plaintiff then proceeded into the intersection directly in the path of Defendant. Defendant immediately braked and swerved in an attempt to avoid colliding with Plaintiff's vehicle but was unsuccessful.

## LAST CLEAR CHANCE & COMPARATIVE FAULT

Plaintiff tendered, and the trial court refused, the following jury instructions:

Plaintiff's Proposed Final Instruction No. 16:

Under the doctrine of Last Clear Chance the negligence of the Plaintiff does not prevent a recovery for the negligence of the defendant where it appears that the defendant by exercising reasonable care might have avoided injuring the plaintiff, notwithstanding the Plaintiff's negligence. It applies where an injured person has by his own negligence placed himself in a place of peril which becomes known to the one who injures him and who could have

avoided the injury by due care after he knew of the peril.

Plaintiff's Proposed Final Instruction No. 17:

> For the doctrine of Last Clear Chance to apply it is essential that the defendant should have had knowledge of the plaintiff's peril and the ability and opportunity to avert injury.

■ Plaintiff contends refusal of the instructions amounts to reversible error. In determining whether any error results from refusal of a tendered instruction, we consider whether the tendered instruction correctly states the law. *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217, 1219. If the instruction is a correct statement of the law, we must consider whether there is evidence in the record to support giving the instruction. *Id.* If so, we must examine whether the substance of the tendered instruction is covered by other instructions. *Id.*

■ In order to determine whether Plaintiff's proffered instructions were a correct statement of the law, we must determine whether the doctrine of last clear chance survived the enactment of Indiana's Comparative Fault Act, Ind.Code 34–4–33–1, *et seq.*

What is the doctrine of last clear chance? Under our former tort system based on common law negligence, any contributory negligence on the part of the plaintiff foreclosed recovery, even if the plaintiff's contributory negligence was minimal compared with that of the defendant. *Compton v. Pletch* (1990), Ind.App., 561 N.E.2d 803, 806, transfer granted and opinion adopted by *Compton v. Pletch* (1991), Ind., 580 N.E.2d 664. The doctrine of last clear chance evolved as a means of, in certain circumstances, alleviating the harshness of the application of the contributory negligence impediment to recovery. *Id.* An example of a situation in which the doctrine of last clear chance would come into play was provided by the Seventh Circuit Court of Appeals in *Roggow v. Mineral Processing Corp.* (7th Cir.1990), 894 F.2d 246:

> The classic last clear chance scenario is probably the case of a drunk sleeping on the tracks. Comes the train. The engineer spies the drunk well in advance but negligently fails to stop in time. All the circumstances of the tragedy—drunk asleep on the tracks, train approaching—are established even before the engineer acts (or fails to). Thus, the engineer has and misses an opportunity to avoid a disaster that is already actual or imminent.

*Id.* at 248.

As demonstrated by the above example, the doctrine of last clear chance applied in a case where a plaintiff's own negligence placed him in a position of peril, but also where a defendant could have avoided or greatly diminished the damage, but did not. In the absence of contributory negligence on the part of plaintiff, there would be no need for a last clear chance instruction. Thus, its use is interwoven with the concept of contributory negligence.

In 1985, the Indiana legislature, for the most part, abandoned the traditional common law negligence/contributory negligence method of analyzing fault in favor of a system based on comparative fault. I.C. 34–4–33–1, *et seq.* The legislature adopted the "modified" approach to comparative fault, meaning that the fault of the parties is compared, and responsibility assigned according to percentage of fault, unless the plaintiff's fault is greater than the fault of all persons whose fault proximately contributed to the plaintiff's damages. *Id.* Should the plaintiff's fault exceed that of all others responsible, plaintiff is prevented from recovering. *Id.*

Under comparative fault, the need for an ameliorative doctrine such as last clear chance is eliminated. Last clear chance in reality permits a comparison of fault. Because this is incorporated into a system of comparative fault, instructing a jury on the doctrine of last clear chance would at best be cumulative.

But, there is also more than a slight possibility that a jury given a last clear chance instruction in conjunction with comparative fault instructions might not recognize that the last clear chance instruction was merely a restatement of what they had already been told to assess. There is a strong risk that instructing on last clear chance would impose

on the minds of the jury an impression that if a last clear chance scenario were present, the plaintiff need not be assessed any fault for the occurrence. It has been held that enactment of the Comparative Fault Act "reflects a legislative determination that 'fairness' is best achieved by relative assessment of the parties' respective conduct." *Robbins v. McCarthy* (1991), Ind.App., 581 N.E.2d 929, 932, *trans. denied.* An instruction on last clear chance carries too great a risk of confusing the jury in their role as assessors of degrees of fault. Accordingly, we hold that the concept of last clear chance has no application under our current system of comparative fault and consequently the trial court did not err in refusing plaintiff's tendered instructions.[1]

### *INSURANCE*

■ Plaintiff argues that the trial court erred in refusing a request for mistrial following the interjection of information concerning insurance coverage. On Plaintiff's redirect examination of Defendant, the following occurred:

Q Mr. Taylor, I wanted to inquire if you recall making a statement to Kay Johnson?

A Who is Kay Johnson?

Q Did you have a conversation with a Kay Johnson at 3:15 on Friday, April 26, 1991, concerning an accident which occurred at 234 and Fortville Pike on April 25th at approximately 4:00 p.m.?

MR. HAMMEL: If you recall.

Q And I will permit the witness to refresh his recollection.

A You know, as with anything two-and-a-half years ago, it's hard to, it's hard to remember any of this. I don't remember speaking with Mrs. Johnson. I do know that if Miss Johnson—see, I don't know the name, but if Miss Johnson was a representative of, I think it was Farmer's Insurance, the company that paid for my vehicle after the collision and paid for her rental car after the collision, then this could be, you know, that. I know someone—it could—it was either Farmer's or, I don't think this is from my insurance company. I think it's—I think I made two of these and I don't know which one this is. I don't recall.

Q Well, do you recollect the conversation?

A No, but I do remember speaking, you know, making a transcrip[t] . . .—them making a statement over the phone, and I don't know if it was for Farmer's, or for my insurance company. I don't recall. I dealt mostly with Mrs. Hull's insurance company, because they're the ones that assumed fault and paid for my vehicle, and provided me with a rental car until they did settle, which was probably a week.

MR. WILLIAMS: I'm going to move that that last testimony be stricken as unresponsive to . . .

COURT: I'd suggest that counsel propose a question to this witness instead of letting him go ahead and say whatever he desires to say. The question was asked. I'll leave what the witness said.

Q I'll ask you if you recall making a statement regarding your, what you did when you saw, when you saw her?

MR. HAMMEL: We're going to OBJECT. You can show him the statement and ask him if he made that.

A. Obviously, I can't recall, but,. you know, I, I don't remember . . .

COURT: The question, sir—I'd appreciate you just answering the question. Do you recall making a statement was the question.

WITNESS: No, I can't.

COURT: Okay, then you need to stop after you answer the question.

MR. WILLIAMS: No further questions.

The court then took a lunch break. Upon returning to the courtroom the following dis-

---

1. Defendant's thoroughly-researched and persuasive brief advises us that the majority of jurisdictions which have considered this issue have come to the same conclusion as we do today. *See e.g. McIntyre v. Balentine* (1992), Tenn., 833 S.W.2d 52; *Bokhoven v. Klinker* (1991), Iowa, 474 N.W.2d 553; *Dykeman v. Engelbrecht* (Ct. App.1990), 166 Ariz. 398, 803 P.2d 119.

cussion took place outside the presence of the jury:

> MR. WILLIAMS: Yes, Your Honor, we MOVE FOR A MISTRIAL on the basis that during the examination of Mr. Taylor, there was a gross violation of this Court's Voir Dire Order. I feel that the parties are under an obli ..., particularly the parties are under an obligation to follow the Court's orders regarding voir, or regarding limine motions. That—there was a limine motion which we filed and which the Court granted which indicated the, Mr. Taylor was not to discuss any of his damages. Those were just not an issue in this case and they have not been raised as an issue, and they almost inevitably would have led to just what was blurted out by Mr. Taylor, not only that his vehicle was damaged, which frankly would not be so bad, although that was violative of the Order, but, then he went on from that to say not only was his vehicle damaged, but that he breached the subject also of another limine motion and that was that insurance not be mentioned.

In response, the trial court noted that there were two motions in limine filed and granted, one by Plaintiff preventing Defendant from mentioning his damages, and one by Defendant preventing Plaintiff and Plaintiff's witnesses from mentioning insurance. The court noted some question as to whether Defendant's motion in limine would even cover Defendant's testimony, and also noted that Plaintiff failed to object or attempt to stop Defendant from discussing insurance. The trial court then agreed to admonish the jury to disregard everything following Defendant's testimony that he did not recollect giving a statement to Miss Johnson and denied the motion for mistrial.

 Plaintiff argues that the admonition was insufficient to cure the damage caused by Defendant's testimony and that the only acceptable remedy was a mistrial. "Generally, any evidence or remarks about liability insurance in a negligence case is inadmissible." *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148, 153. "When inadmissible evidence of insurance coverage is interjected into a trial, the trial court may withdraw the case from the jury or admonish the jury." *Id.* The trial court has discretion in determining whether to grant a mistrial, and its decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Schlomer v. State* (1991), Ind., 580 N.E.2d 950, 955. The granting of a motion for mistrial lies in the sound discretion of the trial judge. *Martin Chevrolet Sales, Inc. v. Dover* (1986), Ind.App., 501 N.E.2d 1122, 1129–30. Generally, on appeal a trial court's decision that an admonition is sufficient to remedy the harm will not be disturbed. *Palmer v. State* (1985), Ind., 486 N.E.2d 477. A review of the situation before us convinces us that the harm caused by the introduction of the issue of insurance was adequately cured by the trial court's admonishment to the jury.

Further, Plaintiff is in a poor position to complain because a review of the record leaves the firm impression that this was invited error. Plaintiff initiated the discussion of statements Defendant may have made to insurance representatives and when Defendant started talking about insurance, Plaintiff made no effort to direct him back on track. Instead, he again asked Defendant the same question and again made no effort to stop his flow. "A party cannot complain of an error which he has invited." *Dale v. Trent* (1970), 146 Ind.App. 412, 256 N.E.2d 402, 411. We find no error in the trial court's decision to deny the motion for mistrial.

AFFIRMED.

GARRARD, J., and SHARPNACK, C.J., concur.